**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Lynn Littlejohn,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-12-00267-PHX-NVW<br><br>**ORDER** |

Plaintiff Jennifer Lynn Littlejohn seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  BACKGROUND**

**A.  Factual Background**

Littlejohn was born in July 1972. She has a high school education plus two years of college and is able to communicate in English. She worked as an insurance agent for thirteen years, but has not worked since June 26, 2009. As a result of degenerative disc disease of the lumbar spine, she required surgery in September 2009 for removal of a herniated disc and widening of the holes where the nerve roots leave the spinal canal.

Littlejohn testified that she continues to have constant back pain, except for brief, temporary relief after epidural steroid injections. She also testified that she is able to drive and go grocery shopping, but cannot sit or stand in one position for very long.

### B. Procedural History

On July 20, 2009, Littlejohn applied for disability insurance benefits and supplemental security income, alleging disability beginning June 26, 2009. On March 2, 2011, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On June 13, 2011, the ALJ issued a decision that Littlejohn was not disabled within the meaning of the Social Security Act. The Appeals Council denied Littlejohn's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On February 8, 2012, Littlejohn sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The

ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

### III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### IV.   ANALYSIS

The ALJ found that Littlejohn meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial

gainful activity since June 26, 2009.  At step two, the ALJ found that Littlejohn has the following severe impairments:  degenerative disc disease of the lumbar spine, status post lumbar decompression, and discectomy with radiculopathy.  At step three, the ALJ found that Littlejohn's impairments did not meet a listing.  At step four, the ALJ found that Littlejohn:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations:  she may occasionally lift and/or carry up to 10 pounds and can stand and/or walk up to 6 hours in an 8-hour workday.  She can sit for up to 6 hours of an 8-hour workday, but should never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, crouch, kneel, and crawl, but should avoid concentrated exposure to vibration, hazardous machinery, and unprotected heights.

Because her previous work as an insurance agent was not sedentary, the ALJ found that Littlejohn was unable to perform any past relevant work.  At step five, the ALJ determined that, considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Littlejohn can perform.

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  A treating physician's opinion is afforded great weight because such physicians are

- 4 -

"employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

- 5 -

with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors.  *Id.*  Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record.  *Id.* at 632.

### 2. Neurosurgeon Brian Fitzpatrick, M.D.

In August 2009, Littlejohn was referred for urgent back surgery.  On September 10, 2009, Littlejohn consulted with Dr. Fitzpatrick.  His notes state that she was "a candidate for surgery considering her persistent left lower extremity complaints which are consistent with a radiculopathy and considering her imaging studies which do reveal a left L5-S1 disk bulge/herniation."  He explained to her that "her symptoms seem somewhat out of proportion to the size of the herniated disk" as shown by her August 14, 2009 MRI scan, and he ordered a repeat MRI scan based on the worsening of her symptoms.  Dr. Fitzpatrick also noted that he explained to Littlejohn that he was "somewhat concerned about her narcotic use" because she had been at "a very high dose of narcotics on a daily basis" and had been on daily narcotics for at least 9 months.  The repeat MRI scan was taken September 16, 2009, and showed no change.  On September 29, 2009, Dr. Fitzpatrick performed her back surgery.

On January 4, 2010, Dr. Fitzpatrick assessed Littlejohn's ability to do work-related physical activities.  He opined that she could occasionally lift and/or carry 20 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, and sit less than 2 hours in an 8-hour workday.  He further opined that

she must alternate sitting and standing after less than one hour of sitting or standing, she could occasionally climb and stoop, frequently balance, and never kneel or crouch. He assessed her level of pain as moderate, *i.e.*, pain affects but does not preclude her ability to function. He also opined that Littlejohn's pain was often sufficiently severe enough to interfere with attention and concentration and that she often experiences deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner.

### 3.  Consultative Examiner Jeffrey Levison, M.D.

After the administrative hearing, the ALJ ordered a consultative examination and review of medical records by Jeffrey Levison, M.D., which Dr. Levison performed on April 21, 2011. He observed that Littlejohn had full range of motion about the cervical, thoracic, and lumbar spine and was able to bend forward and touch her toes. He also opined that Littlejohn could lift and carry up to 20 pounds continually and up to 50 pounds occasionally; sit, stand, and walk for 8 hours at one time without interruption; continuously climb stairs and ramps and balance; frequently kneel, crouch, and crawl; occasionally stoop; never climb ladders or scaffolds; and never work at unprotected heights or near moving mechanical parts. Dr. Levison noted that he imposed some limitations because she was taking sedating medications.

The ALJ gave substantial weight to Dr. Levison's opinion, which contradicted Dr. Fitzpatrick's opinion, and minimal weight to Dr. Fitzpatrick's opinion. The ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting a treating physician's contradicted opinion. The ALJ stated that he was unable to assign more than minimal weight to Dr. Fitzpatrick's opinion for several reasons: (1) it was inconsistent with his own treatment records and other medical evidence of record; (2) it reflected Littlejohn's "condition at a time closely following her surgery, rather than a longitudinal view of her ongoing medical impairments and

limitations"; and (3) "there is little or no evidence of treatment from this provider following surgery." These reasons are specific and legitimate and supported by substantial evidence in the record.

### B. The ALJ Did Not Err in Evaluating Littlejohn's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Littlejohn's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Littlejohn's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

Littlejohn testified that she had driven to the grocery store two days before the administrative hearing and had recently been in a minor hit-and-run car accident when she was driving. She also said that her husband usually goes grocery shopping with her, but if he is not available, she asks someone at the store to assist her with getting things. She said that after her back surgery, her condition improved for a while, but now she is in constant pain. She testified that she has no problems getting dressed, but is not able to dress her daughter. She said bathing in a bathtub is difficult, but she just has to "move around a lot" and "be quick about it." Littlejohn said she usually takes a bath with her daughter. She said she is not able to cook, just get cereal. She said she is not able to do household chores except dusting at a level that does not require her to bend over. She

said that she reads a lot and reads to her daughter. They go to the park across the street and sit on a blanket on the grass. She said she needs to alternate between sitting and standing about every 15 minutes. She takes one nap of at least 45-60 minutes during the day and spends the rest of the day alternating between sitting and standing.

In his hearing decision, the ALJ stated that Littlejohn's complaints of pain after her September 29, 2009 lumbar surgery are not corroborated by the post-hearing consultative examination, which reported 5/5 muscle strength, normal sensation in the upper and lower extremities, negative straight leg raising, no tenderness on palpation, full range of spinal motion, and normal tandem gait, hopping, and squatting. The ALJ also noted that Littlejohn is able to drive and care for her 4-year-old daughter, grocery shop, and do some household chores. The ALJ noted that "the medical evidence appears to reveal a potential issue of drug dependence which could serve as motivation for her continued complaints to providers" and identified specific references in the record. Moreover, the ALJ noted that his overall impression of Littlejohn's testimony was that she was being less than fully credible and possibly underreporting her activities of daily living.

Thus, the ALJ provided specific, clear, and convincing reasons for finding Littlejohn's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible to the extent they are inconsistent with the residual functional capacity assessment.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 11th day of December, 2012.

_____
Neil V. Wake
United States District Judge